# HIN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| HEALTH WATCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 2:18-cv-00209 |
| V. | § | |
| | § | |
| HUAWEI DEVICE USA INC. and HUAWEI | § | **JURY TRIAL DEMANDED** |
| DEVICE CO., LTD., | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Pursuant to Fed. R. Civ. P. 15(a), Plaintiff, Health Watch, LLC ("Health Watch" or "Plaintiff"), by and through its undersigned counsel, hereby respectfully submits this Original Complaint against the above-named Defendants, as follows:

## NATURE OF THE ACTION

1.  This is a patent infringement action to stop Huawei's infringement of United States Patent Nos. 8,460,197 (the "'197 patent"), 8,663,118 (the "'118 patent"), 9,109,902 (the "'902 patent"), 9,314,166 (the "'166 patent"), 9,591,973 (the "'973 patent"), and 9,820,659 (the "'659 patent") (collectively, the "patents-in-suit").

## THE PARTIES

2.  Plaintiff, Health Watch, LLC, is a Texas Limited Liability Company with an office and place business at 1400 Preston Road, Suite 400, Plano, TX 75093.

3.  Upon information and belief, Defendant, Huawei Device USA Inc. ("Huawei Device USA") is a corporation existing under the laws of the state of Texas with its principal place of business at 5700 Tennyson Parkway, Suite 500, Plano, Texas 75024.

4.  Upon information and belief, Defendant, Huawei Device Co., Ltd. d/b/a Huawei Device ("Huawei Device") is a corporation existing under the laws of China with its principal place of

business at Building 2, Section B, Huawei Industrial Base, Bantian, Longgang District, Shenzhen, Guangdong 518129 China.

5.   Defendants Huawei Device USA and Huawei Device are collectively referred to herein as "Huawei."

## JURISDICTION AND VENUE

6.  This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.  The Court has personal jurisdiction over Huawei, including because Huawei has minimum contacts within the State of Texas; Huawei has purposefully availed itself of the privileges of conducting business in the State of Texas; Huawei regularly conducts business within the State of Texas; Huawei puts infringing products into the stream of commerce intentionally destined for infringing use in Texas; and Plaintiff's cause of action arises directly from Huawei's business contacts and other activities in the State of Texas, including at least by virtue of Huawei's infringing systems, devices, and methods, which are at least sold, practiced, and/or used in the State of Texas. Further, this Court has general jurisdiction over Huawei, including due to its continuous and systematic contacts with the State of Texas. Further, on information and belief, Huawei is subject to the Court's jurisdiction, including because Huawei has committed patent infringement in the State of Texas.

8.   Venue is proper for Huawei in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391 and 1400.

9.   Without limitation, on information and belief, venue is proper against Huawei Device in this District, including pursuant to § 1391(c)(3), including because Huawei Device is a foreign corporation which is not a resident in the United States or any judicial district therein, including

this District; and because Hauwei Device is subject to this Court's personal jurisdiction, including for its infringement in Texas, including as noted herein. On information and belief, venue is proper against Huawei Device USA in this District, including pursuant to § 1400(b), including because t Huawei Device USA has a physical place from which business is conducted within this District, including its principal place of business at 5700 Tennyson Parkway, Suite 500 in Plano, Texas; the business conducted at such places are steady, uniform, orderly, and/or methodical, and is settled and not transient, including, but not limited to, management, distribution, sales, and/or offers for sale, including related to Huawei products, including the accused products herein; and such places are that of Huawei Device USA, and Huawei Device USA engages in business from such places. Further, on information and belief, Huawei is subject to venue in this District, including because Huawei has committed patent infringement in this District. Pursuant to 35 U.S.C. § 271, Huawei infringes the patent-in-suit by the infringing acts described herein in this District. Further, Huawei solicits and induces customers/users in this District, including via its website at www.huawei.com and www.hihonor.com. On information and belief, Huawei has customers/users who are residents of this District and who purchase, acquire, and/or use Huawei infringing products in this District.

## INTRODUCTION

### A.  Health Watch, LLC

10. The patents-in-suit originated from Impact Sports. Impact Sports pioneered, among other things, technology that enabled arm/wrist-fastened pulse monitoring devices. Impact Sports forever changed the landscape for fitness trackers and the digital health industry. Impact Sports was, among other things, the first to invent and to market wearable motion resistant optical heart rate monitors for fitness. Other heart rate monitor products, before the innovations of Impact Sports, either required a chest belt, were not continuous, or were inaccurate or inconvenient during

exercise or daily activities.

11. The claimed technologies owned by Health Watch comprise those related to (1) the combination, and use together, of, *inter alia*, a short range wireless transceiver, an accelerometer, an optical sensor, and/or a receiving device; (2) providing accurate health and/or vital sign monitoring devices which are easy to wear on one's body for extended time periods, including during strenuous and/or active workouts; (3) providing such health and/or vital sign monitoring devices which allow the user to input information related to the user's health and/or vital signs and control the output, including relevant calculations, from the health and/or vital sign monitoring devices in order to provide sufficient information to the user about the user's health and/or vital signs; and (4) providing such health and/or vital sign monitoring devices which are functional and interactive with more powerful devices, such as mobile devices.

12. Health Watch is the current assignee of the patents-in-suit and has standing to bring this lawsuit, including the right to recover damages for past, present, and future infringement of the patents-in-suit.

*B.  The Patents-In-Suit*

13. The inventors of the patents-in-suit filed provisional patent application 61/496,046 with the United States Patent and Trademark Office ("USPTO") on June 13, 2011, and each of the patents-in-suit claim priority to the provisional application.

14. The '902 patent was filed as U.S. patent application no. 13/494,084 on June 12, 2012 and issued on August 18, 2015 after full and fair examination.

15. The '197 patent was filed as U.S. patent application no. 13/712,992 on December 13, 2012 and issued on June 11, 2013 after full and fair examination. It is a continuation of the '902 patent.

16. The '118 patent was filed as U.S. patent application no. 13/913,416 on June 8, 2013 and issued on March 4, 2014 after full and fair examination. It is a continuation of the '197 patent,

which is a continuation of the '902 patent.

17. The '166 patent was filed as U.S. patent application No. 14/145,833 on December 31, 2013 and issued on April 19, 2016 after full and fair examination, and is a continuation the '118 patent, which is a continuation of the '197 patent, which is a continuation of the '902 patent.

18. The '659 patent was filed as U.S. patent application No. 14/827,401 on August 17, 2015 and issued on November 21, 2017 after full and fair examination. It is a continuation of the '902 patent.

19. The '973 patent was filed as U.S. patent application No. 15/130,961 on April 16, 2016 and issued on March 14, 2017 after full and fair examination. It is a continuation of application the '166 patent, which is a continuation of the '118 patent, which is a continuation of the '197 patent, which is a continuation of the '902 patent.

20. The Abstract of each of the patents-in-suit states the following:

> A monitoring device with a pedometer is disclosed herein. The monitoring device preferably comprises an article, an optical sensor, an accelerometer and processor. The optical sensor preferably comprises a photodetector and a plurality of light emitting diodes. A sensor signal from the optical sensor is processed with a filtered accelerometer output signal from the accelerometer to generate a pedometer function.

21. As of the priority date of the patents-in-suit, there was a need to know how one is doing from a health perspective that prior art and conventional devices failed to satisfy. '659/1:29-31. In some individuals, there is a daily, even hourly, need to know one's health. '659/1:31-32. Further, in monitoring one's health there is a constant need to know how many calories have been expended whether exercising or going about one's daily routine. '659/1:60-62. The amount of calories burned during exercise is a measure of the total amount of energy used during a workout. '659/1:62-66. This can be important, since increased energy usage through exercise helps reduce body fat. '659/1:66-67. To calculate the amount of calories burned during an hour of exercise, one may multiply the intensity level of the exercise by one's body weight (in kilograms). '659/2:1-5. The

readings and calculations, such as calories, provided by prior art and conventional equipment are only accurate if one is able to input one's body weight. '659/2:18-19. If the machine does not allow this, then the "calories per hour" or "calories used" displays are only approximations, and prior art, conventional machines generally had built-in standard weights (usually 174 pounds) that were used when there was no specific user weight. '659/2:19-23.

22. In the prior art there were some, albeit inferior, devices that attempted to meet this need. '659/1:32-33. One such device is a pulse oximetry device, which is used to determine the oxygen saturation of arterial blood. '659/1:34-36. Pulse oximeter devices typically contain two light emitting diodes: one in the red band of light (660 nanometers) and one in the infrared band of light (940 nanometers). '659/1:36-38. Oxyhemoglobin absorbs infrared light while deoxyhemoglobin absorbs visible red light. '659/1:39-40. Pulse oximetry devices are non-invasive and they are generally easy to use, allow for continuous monitoring, permit early detection of desaturation, and are relatively inexpensive. '659/1:49-52. The disadvantages of pulse oximetry devices include that they are prone to artifact and they are inaccurate at saturation levels below 70%, and there is a risk of burns in poor perfusion states. '659/1:52-55. Several factors can cause inaccurate readings using pulse oximetry including ambient light, deep skin pigment, excessive motion, fingernail polish, low flow caused by cardiac bypass, hypotension, vasoconstriction, and the like. '659/1:55-59.

23. There are also inferior prior art devices that utilize a watch-type monitor to provide the wearer with heart rate as measured by a heartbeat sensor in a chest belt. '659/2:24-26. Prior art and conventional technologies that preceded the priority date of the patents-in-suit, and notably the prior art described in the specification, have provided some devices to meet the need to know how one is doing from a health perspective, but these prior art and conventional devices often suffer from at least one of many shortcomings, including, without limitation, issues with noise, light and motion related problems. '659/1:32-33 & 2:27-28. Moreover, at the time of the patented

inventions, obtaining the data captured by prior art and conventional health and/or vital sign monitoring devices, such as data from the included sensors, and these problems are further increased when the user is on the go, and/or participates in an athletic activity such as running. '659/2:28-30. Further, attempting to correct one problem often creates additional problems such as increasing a sensor output which results in a shorter battery life. '659/2:30-32.

24. Further, as noted, the readings and calculations, such as calories, provided by prior art and conventional equipment are less accurate than the claimed invention. '659/2:18-19. Among other things, prior art and conventional devices failed to provide a means for monitoring one's health that is accurate, easy to wear on one's body for extended time periods, allows the user to input information and control the output, and provides sufficient information to the user about the user's health. '659/2:33-34. Thus, there was a need for, among other things, monitoring devices that could be worn for an extended period and provide health information to a user. The patents-in-suit satisfied those needs and others with, among other things, devices for monitoring a user's vital signs and using an accelerometer in connection with filtering the vital sign signal. '659/1:23-26 & 2:37-39.

25. Among other things claimed, claimed inventions provide solutions to the shortcomings of the prior art, including those noted above. '659/2:43-44. Further, the claimed inventions provide solutions which are accurate, comfortable to wear by a user for extended time periods, allow for input and controlled output by the user, are light weight, and provide needed real-time information to the user about the user's health. '659/2:44-48. Moreover, wearable devices, such as todays ubiquitous fitness trackers smart watches, and similar devices, were unheard of at the time of the claimed inventions and the field was, at best, just beginning to develop, including in inferior directions.

26. Without limitation, devices, systems, and methods of the asserted claims include

meaningful improvements to any pre-existing technology, including prior art and conventional devices, systems, and methods, comprising (1) the combination, and use together, of, *inter alia*, a short range wireless transceiver, an accelerometer, an optical sensor, and/or a receiving device; (2) providing accurate health and/or vital sign monitoring devices which are easy to wear on one's body for extended time periods, including during strenuous and/or active workouts; (3) allowing the user to input information related to the user's health and/or vital signs and control the output, including relevant calculations, from the health and/or vital sign monitoring devices; and (4) providing such health and/or vital sign monitoring devices which are functional and interactive with more powerful devices, such as mobile devices.

27. Additionally, asserted claims of the patents-in-suit comprise improvements in the battery life on the data capture device, including by reducing the processing done by the device and thus reducing battery consumption. Particularly applicable to wireless data capture devices small in size, such as petite fitness tracking devices, battery life plays a major role in the user experience. Asserted claims of the patents-in-suit allow for, among other things, a data capture device to offload calculations and other processing related to the user's health and/or vital sign information onto a receiving device, such as a mobile device or other computing device. *See, e.g.*, '659/2:44-48 & 8:24-50. The claimed inventions also provide computer and network efficiency at least because they allow data capture devices to have the useful and improved noted sharing functionality without the need to include expensive and battery consuming electronics, cellular antenna, paying for separate cellular service, and extra software and data processing required on the data capture device. The inventors did more than simply apply current technology to an existing problem. Their invention, as embodied in the asserted claims, was a significant advancement in data capture, including mobile data capture, and sharing technology.

28. Including as noted in the patents-in-suit, the technologies and claimed inventions of the

patents-in-suit improved prior data capture, health and/or vital sign monitoring, health and/or vital tracking, health and/or vital sign calculation, and computer communications and/or networking technology including in connection with:

a. the combination, and use together, of, *inter alia*, a short range wireless transceiver, an accelerometer, an optical sensor, and/or a receiving device. *See, e.g.*, '659/3:20-21, 3:28-39, 3:48-55, 3:61-4:16, 4:58-5:16, 6:42-44, 7:44-48, 8:24-50, 9:65-10:3, 13:7-23, & 13:57-14:19;

b. providing such health and/or vital sign monitoring devices which are accurate and easy to wear on one's body for extended time periods, including during strenuous and/or active workouts. *See, e.g.*, '659/2:33-39, 2:44-48, 3:28-37, 4:7-33, 4:46-52, & 6:58-67;

c. providing such health and/or vital sign monitoring devices which allow the user to input information related to the user's health and/or vital signs and control the output, including relevant calculations, from the health and/or vital sign monitoring devices in order to provide sufficient information to the user about the user's health and/or vital signs. *See, e.g.*, '659/2:18-23, 2:44-48, 3:24-27, 7:63-8:4, 8:62-66, & 9:39-64;

d. overcome inability of prior art and/or conventional devices, systems, and methods to communicate with more powerful devices, which comprise bigger displays and/or more processing power, by, *inter alia*, providing such health and/or vital sign monitoring devices which are functional and interactive with more powerful devices, such as mobile devices. *See, e.g.*, '659/3:28-39, 3:61-4:16, 6:42-44, 7:44-48, & 8:24-50;

e. providing the first such health and/or vital sign monitoring devices which are able to be worn in clothing, such as in a watch or otherwise on a user's wrist or ankle, and which take measurements even while the user is exercising, being active, and/or moving around. *See, e.g.*, '659/1:60-67, 2:28-39, 2:44-48, 3:28-37, 4:7-33, 4:46-52, 6:58-67, & 15:3-20;

f. minimizing power usage by the data capture device, including to minimize the need to change batteries or recharge the device. *See, e.g.*, '659/2:30-32; and

g. allowing correlation of motion data with other sensor data, such as heart rate sensor, which, *inter alia*, provides for more accurate heart rate measurements and related calculations, such as calories burned, and compensation for changes to motion of device. *See, e.g.*, '659/3:20-21, 3:28-39, 3:48-55, 3:61-4:16, 4:58-5:16, 6:42-44, 7:44-48, 8:24-50, 9:65-10:3, 13:7-23, & 13:57-14:19.

29. The claims of the Patents-in-Suit, including the asserted claims, when viewed as a whole,

including as an ordered combination, are not merely the recitation of well-understood, routine, or conventional technologies or components. The claimed inventions were not well-known, routine, or conventional at the time of the invention, nearly a decade ago, and represent specific improvements over the prior art and prior existing devices, systems, and methods. While the claimed inventions may comprise conventional devices, the invention relates to, *inter alia*, the combination of these devices in unconventional, novel ways, including as described herein.

30. These noted improvements over the prior art and conventional devices, systems, and methods represent meaningful limitations and/or inventive concepts based upon the state of the art nearly a decade ago. Further, including in view of these specific improvements, the inventions of the asserted claims, when such claims are viewed as a whole and in ordered combination, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, typical, and the like nearly a decade ago, including because, until the inventions of the asserted claims of the patents-in-suit, the claimed inventions were not existing or even considered in the field, nor were they in line with conventional wisdom.

31. The asserted claims, including as a whole, and, where applicable, in ordered combination, comprise, *inter alia*, a non-conventional and non-generic arrangement of hardware, including data capture sensors, in a data capture device and, in some instances, a mobile device with wireless communications that represent technical improvements to the operation of, and interactivity within and/or between, such devices, including those improvements noted above. Further, the claimed inventions improving computer functionality, including, as noted herein, providing for health and/or vital sign monitoring devices to be worn on a user's clothing, accessories, or body, such as via a watch or other wearable device, including while the user is active, exercising, and/or on the go.

32. Additionally, as noted, the claimed inventions provide for the use of health and/or vital

sign monitoring devices comprising wireless transceivers, heart rate monitors, and accelerometers, including the use of such sensors and components for more accurate and relevant health and/or vital sign data for the user. The use of the transceiver provides, *inter alia*, for use of the processing power of larger devices for more robust and accurate calculations. The use of the accelerometer, including in combination with the heart rate monitor, provides, *inter alia*, for correlation of the user's motion data with the data obtained from the heart rate sensor, which is helpful in making heart rate measurements more accurate and which compensate for changes to the motion of device; and improve the device functionality from an application level which is useful in tracking steps. Moreover, the use of the accelerometer in combination with the heart rate monitor provides, *inter alia*, for calculating the user's moving heart rate, rather than stationary heart rate, which is useful for medical purposes where an active heart rate may be necessary. Further, the use of the accelerometer in combination with the heart rate monitor provides, *inter alia*, for calculation of an estimate of the calories burned by the user, which, as noted above, can be difficult and requires both sensors.

33. The technology recited in the claims of the patents-in-suit provides an inventive concept and does not claim an abstract idea. Including due to the inventive combination of elements, the claimed inventions achieve many benefits over prior art devices, systems, and methods, including the benefits noted above. The claimed inventive concepts greatly enhance and facilitate technological devices, systems, and methods which comprise devices, systems, and methods for monitoring a plurality of real-time vital signs of a user and providing pedometer function, comprising a monitoring device worn on an arm of the user, the monitoring device having a first surface and a second surface, the monitoring device comprising an optical sensor for generating a real-time vital sign signal corresponding to the heart rate of the user, an accelerometer, a processor configured to perform a pedometer function based on a plurality of signals from the accelerometer,

a powering source for the monitoring device, and a short range wireless transceiver for transmitting the real-time vital sign signal; and a receiving device comprising a short range wireless transceiver, a processor and a display screen; wherein the optical sensor is an optical sensor comprising at least one light-to-voltage or light-to-frequency photodetector capable of transmitting a digital signal, and one or more light emitting diode capable of radiating light in the range of 550 nanometers to 1100 nanometers.

34. The technology recited in the claims of the patents-in-suit improves the functioning of computers, including data capture, health and/or vital sign monitoring, health and/or vital tracking, health and/or vital sign calculation, and computer communications and/or networking technology, it improves the capabilities, efficiencies, and usability of the foregoing, and it improves over existing technological processes, including with respect to devices, systems, and methods for monitoring a plurality of real-time vital signs of a user and providing pedometer function, comprising monitoring devices comprising an optical sensor, an accelerometer, a processor, a powering source for the monitoring device, and a short range wireless transceiver for transmitting the real-time vital sign signal; and a receiving device comprising a short range wireless transceiver, a processor and a display screen.

35. One inventive component of the claimed inventions of the patents-in-suit comprises improving health and/or vital sign monitoring and related calculations in ways that are necessarily rooted in computer technology, *i.e.*, portable health and/or vital sign monitoring device technology, and comprise improvements over prior technologies in order to overcome problems, including the shortcomings noted above, specifically arising in the realm of computers, including health and/or vital sign data monitoring, processing, and calculating, and computer networks. Including as noted above, the claims recite inventions that were not merely a routine or conventional use of conventional devices and technologies. The claimed solutions amount to inventive concepts for

resolving the particular problems and inefficiencies noted above, including in connection with the accuracy of, feasibility of wearing, and interactions with, the inventive devices, systems, and methods. The claimed inventions are not well-known, fundamental economic or conventional business practices, nor were they practices to which general-purpose computer components were added after the fact. Nor, as noted in the specifications and above, were the specifically disclosed and claimed combination of devices, steps, and processes existing in the art prior to the inventions of the patents-in-suit.

36. Independent claim 1 of the '659 patent covers the following:

An arm-based pedometer comprising:
> an article to be worn on an arm of the user, the article having a first surface and a second surface;
> a processor;
> a powering source;
> a short range wireless transceiver for transmitting data from the article;
> an accelerometer; and
> an optical sensor for generating a signal corresponding to the heart rate of the user,
>> wherein the optical sensor is selected from the group consisting of an optical sensor comprising a light-to-voltage photodetector capable of transmitting a digital signal and one or more light emitting diode capable of radiating light ranging from 550 nanometers to 1100 nanometers, an optical sensor comprising a light-to-frequency photodetector capable of transmitting a digital signal and one or more light emitting diode capable of radiating light ranging from 600 nanometers to 1100 nanometers, an optical sensor comprising a plurality of light-to-voltage photodetectors capable of transmitting a digital signal and one or more light emitting diode capable of radiating light ranging from 550 nanometers to 1100 nanometers, an optical sensor comprising a plurality of light-to-frequency photodetectors capable of transmitting a digital signal and one or more light emitting diode capable of radiating light ranging from 550 nanometers to 1100 nanometers, an optical sensor comprising a light-to-voltage photodetector capable of transmitting a digital signal and one or more light emitting diode capable of radiating light at 567 nanometers, and an optical sensor comprising a light-to-voltage photodetector capable of transmitting a digital signal and a plurality of light emitting diodes capable of radiating green light ranging from 500 to 570 nanometers;
> wherein the processor is configured to generate a real-time heart rate from a signal from the optical sensor; and
> wherein the processor is configured to process a signal from the accelerometer in a pedometer function to determine distance traveled by the user.

37. The independent claims of the '197, '118, '902, '166, '973, and '659 patents have multiple similarities with each other, and each comprise devices similar to that claimed in claim 1 of the '659 patent. Additionally, the '197, '118, '902, '166, and '659 patents each comprise independent claims comprising systems comprising devices similar to that in claim 1 of the '659 patent and a receiving device comprising a short range wireless transceiver, a processor and a display screen. Additionally, the '973 patent comprises independent claim 1 comprising a method for monitoring distance traveled by a user comprising a device similar to that in claim 1 of the '659 patent. The independent claims of the '197, '118, '902, '166, '973, and '659 patents have multiple similarities with each other, and are each unconventional and not directed to any abstract idea, including for at least the reasons noted herein, including with respect to claim 1 of the '659 patent. Further, the independent claims of the '118, '902, '166, '973, and '659 patents have multiple similarities with each other, and each comprise meaningful limitations, inventive concepts, and technological benefits, including for at least the same reasons noted herein, including with respect to claim 1 of the '659 patent.

38. Neither claim 1, nor any other claims, of the patents-in-suit preempt any abstract idea or otherwise preempt anything that would render them unpatentable. For example, one is free to practice the prior art of record and the prior art referenced in the specification. The claims of the patents-in-suit do not improperly inhibit further discovery by tying up any building blocks of human ingenuity or technological work.

39. The claims of the patents-in-suit cannot be practiced by a human alone. Although the inventions of the patents-in-suit involve devices, systems, and methods, the claimed devices, systems, and methods are far different from any human devices, systems, and methods used in connection with monitoring health and/or vital signs. There exists no human analogue to the devices, systems, and methods claimed in the patents-in-suit. The claims are specifically directed

to, *inter alia*, devices, systems, and methods for monitoring a plurality of real-time vital signs of a user and providing pedometer function, comprising monitoring devices comprising an optical sensor, an accelerometer, a processor, a powering source for the monitoring device, and a short range wireless transceiver for transmitting the real-time vital sign signal; and a receiving device comprising a short range wireless transceiver, a processor and a display screen. These things exist only in the context of computers, and, specifically, data capture, health and/or vital sign monitoring, health and/or vital tracking, health and/or vital sign calculation, and computer communications and/or networking technology.

40. The claims of the patents-in-suit cover, among other things, specific devices, specific systems, and specific applications of specific methods for monitoring health and/or vital signs, comprising the use, in combination, and via the interaction between, *inter alia*, a wireless transceiver, an optical sensor, an accelerometer, and a receiving device, including as noted above. The claims comprise, among other things, specific applications or improvements to technologies in the marketplace, including improvements to the existing data capture, health and/or vital sign monitoring, health and/or vital tracking, health and/or vital sign calculation, and computer communications and/or networking technology. Properly understood, the claimed technology constitutes the application of certain inventive ideas, not previously existing or obvious, and it necessitates the use of discrete computer hardware and software components configured and programmed in a particular way that enable performance of the specified functions.

41. Claim 1 of the '659 patent, and similar claims of the other patents-in-suit, also contain additional unconventional, non-routine, novel, meaningful, and inventive claim limitations, including when the claim is viewed as a whole, which comprise a health and/or vital sign monitoring device, such as an arm-based pedometer. Claim 1 of the '659 patent, and those noted similar claims, cover, among other things, specific devices, comprising specific hardware and/or

software thereon, including for monitoring a plurality of real-time vital signs of a user and providing pedometer function, comprising specific monitoring devices comprising a specific optical sensor for tracking a user's heart rate, a specific accelerometer for tracking a user's movement, a specific processor for collecting and analyzing the tracked data, a specific powering source for the monitoring device for providing power to the device on the go and/or during active situations, and a short range wireless transceiver for transmitting the real-time vital sign signal; and a receiving device comprising a short range wireless transceiver, a processor and a display screen, including as noted above, including in order to achieve the aims of the invention as stated above, and to overcome the shortcomings in the prior art, including prior art data capture, health and/or vital sign monitoring, health and/or vital tracking, health and/or vital sign calculation, and computer communications and/or networking devices, systems, and methods, as noted above.

42. Claim 1 comprises, among other things, specific applications or improvements to technologies in the marketplace, including improvements to the existing devices, systems, and methods, noted herein. Properly understood, the claimed technology constitutes the application of certain inventive ideas, not previously existing or obvious, and it necessitates the use of discrete computer hardware and software components configured and programmed in a particular way that enable performance of the specified functions, including in order to achieve the aims of the invention as stated above, including through computer the claimed devices, systems, and methods, and to overcome the shortcomings in the prior art, including the prior art devices, systems, and methods noted above, and in the specifications.

43. Further, including when claim 1 is viewed as a whole at the time of the invention, there are sufficient unconventional, non-routine, novel, meaningful, and inventive claim limitations to claim 1 that are sufficient to ensure that the claim, in practice, amounts to significantly more than merely a patent on any abstract idea or patent ineligible concept. Those unconventional, non-routine,

novel, meaningful, and inventive claim limitations comprise the following: devices, such as an arm-based pedometer, for monitoring a plurality of real-time vital signs of a user and providing pedometer function, comprising monitoring devices comprising an optical sensor, an accelerometer, a processor, a powering source for the monitoring device, and a short range wireless transceiver for transmitting the real-time vital sign signal; and a receiving device comprising a short range wireless transceiver, a processor and a display screen.

44. The invention of claim 1 uses computer technology to overcome the shortcomings of prior art devices, systems, and methods, including as noted above, including state of the art data capture, health and/or vital sign monitoring, health and/or vital tracking, health and/or vital sign calculation, and computer communications and/or networking devices, systems, and methods, which lacked, among other things, the ability to perform the foregoing steps. As such, claim 1 overcomes specific technical problems, including those discussed in the '659, and the patents-in-suit overall, as noted above, and effects improvements to specific technologies or technical fields, namely computer technologies, such as those noted above. Various inventive components of the '659 patent are listed above, and include, but are not limited to, the combination, and use together, of, *inter alia*, a short range wireless transceiver, an accelerometer, an optical sensor, and/or a receiving device; (2) providing accurate health and/or vital sign monitoring devices which are easy to wear on one's body for extended time periods, including during strenuous and/or active workouts; (3) providing such health and/or vital sign monitoring devices which allow the user to input information related to the user's health and/or vital signs and control the output, including relevant calculations, from the health and/or vital sign monitoring devices in order to provide sufficient information to the user about the user's health and/or vital signs; (4) providing such health and/or vital sign monitoring devices which are functional and interactive with more powerful devices, such as mobile devices; and (5) improving battery life on the data capture device. However, the claims

recite inventions that were not merely routine or conventional uses of conventional wisdom and conventional devices, systems, and methods, including in view of the specifically disclosed and claimed solutions noted above.

45. Claim 1 is not directed to a longstanding commercial practice, nor does it merely apply generic or general-purpose computers to prior art devices, systems, or methods. Including as noted above, prior art devices, systems, and methods were incapable of the functionality and disclosed improvements of the method of claim 1, including those limitations of the prior art specifically noted in the '659 patent, noted above. The technology claimed in the '659 patent does not preempt all types of health and/or vital sign monitoring, or devices for the foregoing, or anything else. For example, the prior art cited on the face of the '659 patent remains available for practice by Huawei, and the '659 patent claims do not preempt practice of those prior art devices, systems, or methods.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,460,197**

46. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

47. The '197 patent, entitled "Monitoring Device With A Pedometer," was duly and legally issued by the USPTO on June 11, 2013 after full and fair examination.

48. The claims of the '197 patent cover, *inter alia*, systems, including associated with computers and computer sensors, for monitoring a plurality of real-time vital signs of a user and providing a pedometer function, the system comprising: a monitoring device worn on an arm of the user, *e.g.*, an arm based pedometer, the monitoring device having a first surface and a second surface, the monitoring device comprising an optical sensor for generating a real-time vital sign signal corresponding to the heart rate of the user, an accelerometer, a processor configured to perform a pedometer function based on a plurality of signals from the accelerometer, a powering source for the monitoring device, and a short range wireless transceiver for transmitting the real-time vital sign signal; and a receiving device comprising a short range wireless transceiver, a

processor and a display screen; wherein the optical sensor is an optical sensor comprising one or more of a light-to-voltage or light-to-frequency photodetector capable of transmitting a digital signal, and one or more light emitting diode capable of radiating light ranging in the range of 550 nanometers to 1100 nanometers, including at 567 nanometers.

49. Without limitation, Huawei infringes the '197 patent by and through at least its using, making, offering for sale, and/or selling of systems comprising such monitoring devices and/or such receiving devices.

50. Without limitation, such monitoring devices comprise at least the products and/or model nos. referred to by Huawei as Huawei Watch (Stainless steel), Huawei Watch (Black), Huawei Watch (Rose gold), Huawei Watch 2 (Leo-B09), Huawei Watch 2 Classic (Leo-B19), Huawei Band 2, Huawei Band 2 Pro (Eris-B29), Huawei Band 2 Pro (ERS-B19), Huawei Fit, Huawei Watch Elegant, Huawei Watch Jewel, Huawei Color Band A2, Honor Band 3. Further, without limitation, such receiving devices comprise at least the products and/or model nos. referred to by Huawei as Activa 4G, Ascend D quad, Ascend D quad XL, Ascend D1, Ascend D1 XL U9500E, Ascend D2, Ascend G300, Ascend G312, Ascend G330, Ascend G330D U8825D, Ascend G350, Ascend G500, Ascend G510, Ascend G525, Ascend G526, Ascend G535, Ascend G6, Ascend G6 4G, Ascend G600, Ascend G615, Ascend G620s, Ascend G628, Ascend G630, Ascend G7, Ascend G700, Ascend G730, Ascend G740, Ascend GX1, Ascend II, Ascend Mate, Ascend Mate2 4G, Ascend Mate7, Ascend Mate7 Monarch, Ascend P1, Ascend P1 LTE, Ascend P1 XL U9200E, Ascend P1s, Ascend P2, Ascend P6, Ascend P6 S, Ascend P7, Ascend P7 mini, Ascend P7 Sapphire Edition, Ascend Plus, Ascend Q M5660, Ascend W1, Ascend W2, Ascend W3, Ascend Y, Ascend Y100, Ascend Y200, Ascend Y201 Pro, Ascend Y210D, Ascend Y220, Ascend Y221, Ascend Y300, Ascend Y320, Ascend Y330, Ascend Y511, Ascend Y520, Ascend Y530, Ascend Y540, Ascend Y550, Ascend Y600, B2201H-201(IDU) Model No. B2201H-201, C3200,

CDMA/LTE Smart phone Model No. HUAWEI H882L/H882L, CDMA/LTE smart phone Model No. M931, cdma2000 Digital Mobile Phone Model No. HUAWEI C8816, cdma2000 Digital Mobile Phone Model No. HUAWEI Y330-C00, cdma2000/GSM Digital Mobile Phone Model No. HUAWEI B199, D51 Discovery, DPF(Data photo frame) Model No. PP06, Enjoy 5s, Enjoy 6, FDD-LTE Digital Mobile Phone Model No. HUAWEI ALE-L04, FDD-LTE Digital Mobile Phone Model No. HUAWEI Y550-L01, FDD-LTE Digital Mobile Phone Model No. HUAWEI Y550-L02, FDD-LTE Digital Mobile Phone Model No. HUAWEI Y550-L03, Fusion 2 U8665, Fusion U8652m MediaPad 10 FHD, G3621L, G5000, G5500, G5520, G6005, G610s, G6150, G6153, G6310, G6600 Passport, G6608, G6609, G6620, G6800, G7 Plus, G70002, G7005, G7010, G7206, G7300, G8, G9 Plus, HD OTT Box Model No. dTV 01, Honor 2, Honor 3, Honor 3C, Honor 3C 4G, Honor 3X G750, Honor 3X Pro, Honor 4 Play, Honor 4C, Honor 4X, Honor 5A, Honor 5c, Honor 5X, Honor 6, Honor 6 Plus, Honor 6x, Honor 7, Honor 7i, Honor 8, Honor Bee, Honor Holly, Honor Holly 2 Plus, Honor Holly 3, Honor Note 8, Honor Pad 2, Honor Spree 4X Model No. Che1-L04, Honor V8, HUAWEI Da Vinci Model No. DAV-701L, HUAWEI Da Vinci Model No. DAV-702L, HUAWEI Da Vinci Model No. DAV-703L, HUAWEI Liszt Model No. d-01H, HUAWEI Liszt Model No. M2-A01L, HUAWEI Liszt Model No. M2-A01w, HUAWEI MediaPad 10 FHD Model No. S10-101u, HUAWEI MediaPad 10 FHD Model No. S10-101w, HUAWEI MediaPad 10 FHD Model No. S10-101wf, HUAWEI MediaPad 10 FHD Model No. S10-102L, HUAWEI MediaPad 10 FHD Model No. S10-102u, HUAWEI MediaPad 10 FHD Model No. S10-103L, HUAWEI MediaPad 10 FHD Model No. S10-103LT, HUAWEI MediaPad 10 Link Model No. S10-201L, HUAWEI MediaPad 10 Link Model No. S10-201u, HUAWEI MediaPad 10 Link Model No. S10-201w, HUAWEI MediaPad 10 Link Model No. S10-201wa, HUAWEI MediaPad 10 Link Model No. S10-201wd, HUAWEI MediaPad 10 Link Model No. S10-202u, HUAWEI MediaPad 10 Link+ Model No. S10-231L, HUAWEI MediaPad 10 Link+

Model No. S10-231u, HUAWEI MediaPad 10 Link+ Model No. S10-231w, HUAWEI MediaPad 10 Link+ Model No. S10-232ua, HUAWEI MediaPad 7 Lite Model No. S7-931u, HUAWEI MediaPad 7 Lite Model No. S7-931w, HUAWEI MediaPad 7 Lite Model No. S7-931wa, HUAWEI MediaPad 7 Lite Model No. S7-931wd, HUAWEI MediaPad 7 Lite Model No. S7-932u, HUAWEI MediaPad 7 Lite Model No. S7-933u, HUAWEI MediaPad 7 Lite Quad Model No. S7-961wd, HUAWEI MediaPad 7 Lite+ Model No. S7-951wd, HUAWEI MediaPad 7 Vogue Model No. S7-601c, HUAWEI MediaPad 7 Vogue Model No. S7-601u, HUAWEI MediaPad 7 Vogue Model No. S7-601ue, HUAWEI MediaPad 7 Vogue Model No. S7-601us, HUAWEI MediaPad 7 Vogue Model No. S7-601w, HUAWEI MediaPad 7 Vogue Model No. S7-602u, HUAWEI MediaPad 7 Vogue Model No. S7-611u, HUAWEI MediaPad 7 Youth 2 Model No. S7-721g, HUAWEI MediaPad 7 Youth 2 Model No. S7-721u, HUAWEI MediaPad 7 Youth 2 Model No. S7-721ua, HUAWEI MediaPad 7 Youth 2 Model No. S7-721w, HUAWEI MediaPad 7 Youth 2 Model No. S7-721wa, HUAWEI MediaPad 7 Youth 2 Model No. S7-721wd, HUAWEI MediaPad 7 Youth 2 Model No. S7-722u, HUAWEI MediaPad 7 Youth Model No. S7-701u, HUAWEI MediaPad 7 Youth Model No. S7-701w, HUAWEI MediaPad 7 Youth Model No. S7-701wa, HUAWEI MediaPad 7 Youth Model No. S7-702u, HUAWEI MediaPad 7 Youth Model No. S7-711u, HUAWEI MediaPad Link+ Model No. S10-232L, HUAWEI MediaPad Link+ Model No. S10-233L, HUAWEI MediaPad M1 8.0 Model No. 403HW, HUAWEI MediaPad M1 8.0 Model No. S8-301L, HUAWEI MediaPad M1 8.0 Model No. S8-301u, HUAWEI MediaPad M1 8.0 Model No. S8-301w, HUAWEI MediaPad M1 8.0 Model No. S8-301wf, HUAWEI MediaPad M1 8.0 Model No. S8-302L, HUAWEI MediaPad M1 8.0 Model No. S8-303L, HUAWEI MediaPad M1 8.0 Model No. S8-303LT, HUAWEI MediaPad M1 8.0 Model No. S8-306L, HUAWEI MediaPad M2 8.0 Model No. d-02H, HUAWEI MediaPad M2 8.0 Model No. M2-801L, HUAWEI MediaPad M2 8.0 Model No. M2-801w, HUAWEI MediaPad M2 8.0 Model

No. M2-802L, HUAWEI MediaPad M3 Model No. BTV-W09, HUAWEI MediaPad Model No. S7-301c, HUAWEI MediaPad Model No. S7-301u(P), HUAWEI MediaPad Model No. S7-303u, HUAWEI MediaPad Model No. S7-312u, HUAWEI MediaPad T1 10 Model No. T1-A21L, HUAWEI MediaPad T1 10 Model No. T1-A21w, HUAWEI MediaPad T1 10 Model No. T1-A22L, HUAWEI MediaPad T1 10 Model No. T1-A23L, HUAWEI MediaPad T1 7.0 Model No. T1-701g, HUAWEI MediaPad T1 7.0 Model No. T1-701u, HUAWEI MediaPad T1 7.0 Model No. T1-701ua, HUAWEI MediaPad T1 7.0 Model No. T1-701w, HUAWEI MediaPad T1 7.0 Model No. T1-702u, HUAWEI MediaPad T1 8.0 Model No. S8-701u, HUAWEI MediaPad T1 8.0 Model No. S8-701w, HUAWEI MediaPad T1 8.0 Model No. S8-702u, HUAWEI MediaPad T1 8.0 Model No. S8-702uj, HUAWEI MediaPad T1 8.0 Pro Model No. T1-821L, HUAWEI MediaPad T1 8.0 Pro Model No. T1-821w, HUAWEI MediaPad T1 8.0 Pro Model No. T1-823L, HUAWEI MediaPad T2 7.0 Pro Model No. PLE-701L, HUAWEI MediaPad T2 7.0 Pro Model No. PLE-703L, HUAWEI MediaPad T2 8 Pro Model No. JDN-L01, HUAWEI MediaPad T2 8 Pro Model No. JDN-W09, HUAWEI MediaPad X1 7.0 Model No. 7D-501g, HUAWEI MediaPad X1 7.0 Model No. 7D-501L, HUAWEI MediaPad X1 7.0 Model No. 7D-503L, HUAWEI MediaPad X1 7.0 Model No. 7D-503LT, HUAWEI MediaPad X1 7.0 Model No. 7D-504L, HUAWEI MediaPad X2 Model No. GEM-703LT, HUAWEI MeidaPad T2 7.0 Model No. BGO-DL09, HUAWEI MeidaPad T2 7.0 Model No. BGO-L03, HUAWEI SCL-L01 Model No. HUAWEI SCL-L01, Huawei STB Model No. EC6108V9, Huawei STB,TV Box Model No. Q22, HUAWEI Y360 Model No. HUAWEI Y360-U03, HUAWEI Y360 Model No. HUAWEI Y360-U103, HUAWEI Y360 Model No. HUAWEI Y360-U23, HUAWEI Y360 Model No. HUAWEI Y360-U31, HUAWEI Y360 Model No. HUAWEI Y360-U61, HUAWEI Y360 Model No. HUAWEI Y360-U72, HUAWEI Y360 Model No. HUAWEI Y360-U82, HUAWEI Y360 Model No. HUAWEI Y360-U93, IDEOS S7, IDEOS S7 Slim, IDEOS S7 Slim CDMA, Impulse 4G, LTE

Digital Mobile Phone Model No. H30-L02, LTE/UMTS Smart phone , HUAWEI Ascend Mate2 Model No. HUAWEI MT2-L03, MT2-L03, LTE/UMTS Smart phone Model No. HUAWEI G535-L11, LTE/UMTS Smart phone Model No. HUAWEI G6-L11, G6-L11,P7 mini, LTE/UMTS Smart phone Model No. HUAWEI G6-L22, G6-L22, LTE/UMTS Smart phone Model No. HUAWEI G6-L33, G6-L33, M886 Mercury, Mate 8, Mate 9, Mate 9 Porche Design, Mate 9 Pro, Mate S, MediaPad, MediaPad 10 Link, MediaPad 10 Link+, MediaPad 7 Lite, MediaPad 7 Vogue, MediaPad 7 Youth, MediaPad 7 Youth2, MediaPad M1, MediaPad M1 8.0 Model No. d-01G, MediaPad M2 10.0, MediaPad M2 7.0, MediaPad M2 8.0, MediaPad M3 8.4, MediaPad S7-301w, MediaPad T1 10, MediaPad T1 7.0, MediaPad T1 7.0 Plus, MediaPad T1 8.0, MediaPad T2 10.0 Pro, MediaPad T2 7.0, MediaPad T2 7.0 Pro, MediaPad X1, MediaPad X2 Model No. GEM-701L, MediaPad X2 Model No. GEM-702L, MediaPad X2 Model No. GEM-703L, MediaPadX2, Mobile handset Model No. HUAWEI HN3-U00, Mobile handset Model No. HUAWEI MT1-U06, Mobile handset Model No. HUAWEI P2-6011/P2-6011/HUAWEI P2-6070/P2-6070, Mulan, Nexus 6P, nova, nova plus, nova plus, OSCAR-1101 Model No. OSCAR-1101, OTT Box Model No. MediaQ M220, P8, P8lite, P8lite ALE-L04, P8max, P9, P9 lite, P9 Plus, Pillar, Play, Premia 4G M931, Smart Phone Model No. H891L, Smart Phone Model No. 302HW, Smart Phone Model No. Autana LTE ALE-L43, Smart Phone Model No. CAM-L03, Smart Phone Model No. CAM-L21, Smart Phone Model No. CAM-L23, Smart Phone Model No. CAM-L32, Smart Phone Model No. CHM-U01, Smart Phone Model No. EVA-L09, Smart Phone Model No. EVA-L19, Smart Phone Model No. EVA-L29, Smart Phone Model No. FRD-L02, Smart Phone Model No. FRD-L04, Smart Phone Model No. FRD-L09, Smart Phone Model No. FRD-L14, Smart Phone Model No. FRD-L19, Smart Phone Model No. G620S-UL00, Smart Phone Model No. H1511, Smart Phone Model No. H1512, Smart Phone Model No. H1621, Smart Phone Model No. H1622, Smart Phone Model No. H1623, Smart Phone Model No. H60-L03,

Smart Phone Model No. H60-L04, Smart Phone Model No. H710VL, Smart Phone Model No.

H715BL, Smart Phone Model No. H892L, Smart Phone Model No. HUAWEI ATH-UL01, Smart

Phone Model No. HUAWEI ATH-UL06, Smart Phone Model No. HUAWEI CAN-L01, Smart

Phone Model No. HUAWEI CAN-L02, Smart Phone Model No. HUAWEI CAN-L03, Smart

Phone Model No. HUAWEI CAN-L11, Smart Phone Model No. HUAWEI CAN-L12, Smart

Phone Model No. HUAWEI CAN-L13, Smart Phone Model No. HUAWEI CRR-L09, Smart

Phone Model No. HUAWEI CRR-UL00, Smart Phone Model No. HUAWEI CRR-UL20, Smart

Phone Model No. HUAWEI CUN-L01, Smart Phone Model No. HUAWEI CUN-L02, Smart

Phone Model No. HUAWEI CUN-L03, Smart Phone Model No. HUAWEI CUN-L21, Smart

Phone Model No. HUAWEI CUN-L22, Smart Phone Model No. HUAWEI CUN-L23, Smart

Phone Model No. HUAWEI CUN-L33, Smart Phone Model No. HUAWEI CUN-U29, Smart

Phone Model No. HUAWEI D2-6114/D2-6114, Smart Phone Model No. HUAWEI G615-U10,

Smart Phone Model No. HUAWEI G620-A2, Smart Phone Model No. HUAWEI G620S-L01,

Smart Phone Model No. HUAWEI G735-L03, Smart Phone Model No. HUAWEI G7-L01, Smart

Phone Model No. HUAWEI G7-L02, Smart Phone Model No. HUAWEI G7-L11, Smart Phone

Model No. HUAWEI GRA-L09, Smart Phone Model No. HUAWEI GRA-UL00, Smart Phone

Model No. HUAWEI GRA-UL10, Smart phone Model No. HUAWEI H870C, H870C, Smart

phone Model No. HUAWEI H871G, H871G, Smart Phone Model No. HUAWEI KII-L03, Smart

Phone Model No. HUAWEI KII-L05, Smart Phone Model No. HUAWEI KII-L21, Smart Phone

Model No. HUAWEI KII-L22, Smart Phone Model No. HUAWEI KII-L23, Smart Phone Model

No. HUAWEI KII-L33, Smart Phone Model No. HUAWEI LUA-L01, Smart Phone Model No.

HUAWEI LUA-L02, Smart Phone Model No. HUAWEI LUA-L03, Smart Phone Model No.

HUAWEI LUA-L13, Smart Phone Model No. HUAWEI LUA-L21, Smart Phone Model No.

HUAWEI LUA-L22, Smart Phone Model No. HUAWEI LUA-L23, Smart phone Model No.

HUAWEI LYO-L01, Smart phone Model No. HUAWEI LYO-L02, Smart phone Model No. HUAWEI LYO-L21, Smart Phone Model No. HUAWEI MLA-L01, Smart Phone Model No. HUAWEI MLA-L02, Smart Phone Model No. HUAWEI MLA-L03, Smart Phone Model No. HUAWEI MLA-L11, Smart Phone Model No. HUAWEI MLA-L12, Smart Phone Model No. HUAWEI MLA-L13, Smart Phone Model No. HUAWEI MT7-L09, Smart Phone Model No. HUAWEI MT7-TL10, Smart Phone Model No. HUAWEI NMO-L21, Smart Phone Model No. HUAWEI NMO-L22, Smart Phone Model No. HUAWEI NMO-L23, Smart Phone Model No. HUAWEI NMO-L31, Smart Phone Model No. HUAWEI P6-C00, Smart Phone Model No. HUAWEI P6-U06, Smart Phone Model No. HUAWEI P7-L00, Smart Phone Model No. HUAWEI P7-L10, Smart Phone Model No. HUAWEI P7-L11, P7-L11, Smart Phone Model No. HUAWEI P7-L12, P7-L12, Smart Phone Model No. HUAWEI RIO-L01, Smart Phone Model No. HUAWEI RIO-L02, Smart Phone Model No. HUAWEI RIO-L03, Smart Phone Model No. HUAWEI RIO-UL00, Smart Phone Model No. HUAWEI TAG-L01, Smart Phone Model No. HUAWEI TAG-L03, Smart Phone Model No. HUAWEI TAG-L13, Smart Phone Model No. HUAWEI TAG-L21, Smart Phone Model No. HUAWEI TAG-L22, Smart Phone Model No. HUAWEI TAG-L23, Smart Phone Model No. HUAWEI TAG-L32, Smart Phone Model No. HUAWEI TIT-L01, Smart Phone Model No. HUAWEI TIT-U02, Smart Phone Model No. HUAWEI VNS-L21, Smart Phone Model No. HUAWEI VNS-L22, Smart Phone Model No. HUAWEI VNS-L23, Smart Phone Model No. HUAWEI VNS-L31, Smart Phone Model No. HUAWEI VNS-L52, Smart Phone Model No. HUAWEI VNS-L53, Smart Phone Model No. HUAWEI VNS-L62, Smart phone Model No. HUAWEI Y336-A1, Y336-A1, Smart phone Model No. HUAWEI Y336-A2, Y336-A2, Smart Phone Model No. HUAWEI Y536A1, Smart Phone Model No. HUAWEI Y635-L01, Smart Phone Model No. HUAWEI Y635-L02, Smart Phone Model No. HUAWEI Y635-L03, Smart Phone Model No. HUAWEI Y635-L21, Smart Phone Model No. HW-H60-J1, Smart Phone

Model No. Kavak LTE Y635-L43, Smart Phone Model No. KIW-L21, Smart Phone Model No. KIW-L22, Smart Phone Model No. KIW-L23, Smart Phone Model No. KIW-L24, Smart phone Model No. LYO-L21, Smart Phone Model No. MHA-AL00 (Mate 9), Smart Phone Model No. MT2-L02, Smart Phone Model No. NEM-L21, Smart Phone Model No. NEM-L22, Smart Phone Model No. NEM-L51, Smart Phone Model No. NXT-L09, Smart Phone Model No. PE-TL10, Smart Phone Model No. PLK-L01, Smart Phone Model No. PLK-UL00, Smart Phone Model No. TIT-AL00, Smart Phone Model No. TIT-L01, Smart Phone Model No. VEN-L22, Smart Phone Model No. VIE-L09, Smart Phone Model No. VIE-L29, Smart Phone Model No. Y538, Smart Phone; HUAWEI Ascend G620S Model No. HUAWEI G620S-L02, Smart Phone; HUAWEI Ascend G620S Model No. HUAWEI G620S-L03, Smart Phone; HUAWEI Ascend G7 Model No. HUAWEI G7-L03, smartphone Dual-Mode Model No. C8860, smartphone Dual-Mode Model No. C8950D, smartphone Dual-Mode Model No. HUAWEI G526-L11/G526-L11, smartphone Dual-Mode Model No. HUAWEI G526-L22/G526-L22, smartphone Dual-Mode Model No. HUAWEI G526-L33/G526-L33, smartphone Dual-Mode Model No. HUAWEI G527-U081,G527-U081, smartphone Dual-Mode Model No. HUAWEI G716-L070, smartphone Dual-Mode Model No. HUAWEI G740-L00, G740-L00, smartphone Dual-Mode Model No. HUAWEI U8686/U8686/U8687, smartphone Dual-Mode Model No. HUAWEI Y340-U081,Y340-U081, smartphone Dual-Mode Model No. U8860, smartphone Dual-Mode Model No. U8950-1/HUAWEI U8950-1, smartphone Dual-Mode Model No. U8950-51/HUAWEI U8950-51, smartphone Dual-Mode Model No. U8950D/HUAWEI U8950D, smartphone Dual-Mode Model No. U8950N-1/HUAWEI U8950N-1, smartphone Dual-Mode Model No. U8950N-51/HUAWEI U8950N-51, Smartphone Model No. SCC-L21, Smartphone Model No. 503HW, Smartphone Model No. CHC-U01, Smartphone Model No. CHC-U03, Smartphone Model No. CHC-U23, Smartphone Model No. Che2-L11, Smartphone Model No. Che2-L12, Smartphone Model No.

Che2-L23, Smartphone Model No. G735-L12, Smartphone Model No. G735-L23, Smartphone Model No. HUAWEI ALE-L02, Smartphone Model No. HUAWEI ALE-L21, Smartphone Model No. HUAWEI ALE-L23, Smartphone Model No. HUAWEI SCL-L02, Smartphone Model No. HUAWEI SCL-L03, Smartphone Model No. HUAWEI SCL-L04, Smartphone Model No. HUAWEI SCL-L21, Smartphone Model No. HUAWEI SCL-U03, Smartphone Model No. HUAWEI SCL-U23, Smartphone Model No. HUAWEI SCL-U31, Smartphone Model No. HUAWEI Y560-L01, Smartphone Model No. HUAWEI Y560-L02, Smartphone Model No. HUAWEI Y560-L03, Smartphone Model No. HUAWEI Y560-L23, Smartphone Model No. HUAWEI Y560-U03, Smartphone Model No. HUAWEI Y560-U23, Smartphone Model No. HW-SCL-L32, Smartphone Model No. SCC-U21, Smartphone Model No. SCC-U23, Smartphone Model No. SCL-AL00, SnapTo, Summit, T156, T158, T161L, T201, T208, T211, T261L, T330, T552, T8300, Tablet Model No. BTV-DL09, TB 01 Model No. TB 01, TD-LTE Digital Mobile Phone Model No. HUAWEI TIT-AL00, U1000, U1100, U120, U121, U1250, U1270, U1310, U3100, U3300, U5510, U5900s, U7310, U7510, U7520, U8100, U8110, U8150 IDEOS, U8180 IDEOS X1, U8220, U8230, U8300, U8350 Boulder, U8500 IDEOS X2, U8510 IDEOS X3, U8650 Sonic, U8687 Cronos, U8800 IDEOS X5, U8800 Pro, U8850 Vision, U8860 Honor, U9000 IDEOS X6, U9130, U9150, UMTS Smart phone Model No. HUAWEI G630-U00, UMTS Smart phone Model No. HUAWEI G630-U10, G630-U10, UMTS Smart phone Model No. HUAWEI G630-U20, G630-U20, UMTS Smart phone Model No. HUAWEI G630-U251, G630-U251, UMTS Smart phone Model No. HUAWEI Y530-U00, Y530-U00, UMTS Smart phone Model No. HUAWEI Y530-U051, Y530-U051, WCDMA Digita Mobile Phone Model No. HUAWEI G750-U10, WCDMA Digital Mobile Phone Model No. Bucare Y330-U05, WCDMA Digital Mobile Phone Model No. H30-U10, WCDMA Digital Mobile Phone Model No. HUAWEI G610-U20, WCDMA Digital Mobile Phone Model No. HUAWEI G6-U10, WCDMA Digital Mobile Phone

Model No. HUAWEI G6-U251, WCDMA Digital Mobile Phone Model No. HUAWEI G6-U34, WCDMA Digital Mobile Phone Model No. HUAWEI G730-U251, WCDMA Digital Mobile Phone Model No. HUAWEI G730-U27, WCDMA Digital Mobile Phone Model No. HUAWEI Y221-U03, WCDMA Digital Mobile Phone Model No. HUAWEI Y221-U12, WCDMA Digital Mobile Phone Model No. HUAWEI Y221-U22, WCDMA Digital Mobile Phone Model No. HUAWEI Y221-U33, WCDMA Digital Mobile Phone Model No. HUAWEI Y320-U151, WCDMA Digital Mobile Phone Model No. HUAWEI Y320-U30, WCDMA Digital Mobile Phone Model No. HUAWEI Y320-U351, WCDMA Digital Mobile Phone Model No. HUAWEI Y330-U01, WCDMA Digital Mobile Phone Model No. HUAWEI Y330-U05, WCDMA Digital Mobile Phone Model No. HUAWEI Y330-U07, WCDMA Digital Mobile Phone Model No. HUAWEI Y330-U08, WCDMA Digital Mobile Phone Model No. HUAWEI Y330-U11, WCDMA Digital Mobile Phone Model No. HUAWEI Y330-U15, WCDMA Digital Mobile Phone Model No. HUAWEI Y330-U17, WCDMA Digital Mobile Phone Model No. HUAWEI Y511-U30, WCDMA Digital Mobile Phone Model No. HUAWEI Y520-U03, WCDMA Digital Mobile Phone Model No. HUAWEI Y520-U12, WCDMA Digital Mobile Phone Model No. HUAWEI Y520-U22, WCDMA Digital Mobile Phone Model No. HUAWEI Y520-U33, WCDMA Digital Mobile Phone Model No. HUAWEI Y600-U151, WCDMA Digital Mobile Phone Model No. HUAWEI Y600-U20, WCDMA Digital Mobile Phone Model No. HUAWEI Y600-U40, WCDMA Digital Mobile Phone Model No. HUAWEI Y625-U13, WCDMA Digital Mobile Phone Model No. HUAWEI Y625-U21, WCDMA Digital Mobile Phone Model No. HUAWEI Y625-U32, WCDMA Digital Mobile Phone Model No. HUAWEI Y625-U43, WCDMA Digital Mobile Phone Model No. HUAWEI Y625-U51, WCDMA Digital Mobile Phone Model No. Kavak Y625-U03, WCDMA Digital Mobile Phone Model No. Y221-U43, WCDMA Digital Mobile Phone Model No. Y221-U53, WCDMA Digital Mobile Phone Model No. Y540-U01, WCDMA Digital Mobile

Phone Model No. Y600-U351, WCDMA Mobile handset Model No. HUAWEI U9200, WCDMA Mobile handset Model No. HUAWEI U9500, WCDMA Mobile handset Model No. HUAWEI U9510, WCDMA mobile phone Model No. HUAWEI D2-0082, WCDMA Mobile Phone Model No. HUAWEI G610-U30, WCDMA Mobile Phone Model No. HUAWEI G730-U10, WCDMA Mobile Phone Model No. HUAWEI LUA-U02, WCDMA Mobile Phone Model No. HUAWEI LUA-U03, WCDMA Mobile Phone Model No. HUAWEI LUA-U22, WCDMA Mobile Phone Model No. HUAWEI LUA-U23, WCDMA mobile phone Model No. HUAWEI U9200E, WCDMA mobile phone Model No. HUAWEI U9500E, WCDMA mobile phone Model No. HUAWEI U9508, WCDMA Mobile Phone Model No. HUAWEI Y220-U00, WCDMA Mobile Phone Model No. HUAWEI Y220-U05, WCDMA Mobile Phone Model No. HUAWEI Y220-U10, WCDMA Mobile Phone Model No. HUAWEI Y220-U17, WCDMA Mobile Phone Model No. HUAWEI Y320-U10, WCDMA Mobile Phone Model No. HUAWEI Y321-U051, WCDMA Mobile Phone Model No. HUAWEI Y336-U02, WCDMA Mobile Phone Model No. HUAWEI Y360-U42, WCDMA Mobile Phone Model No. HUAWEI Y511-U10, WCDMA Mobile Phone Model No. HUAWEI Y511-U251, WCDMA Mobile Phone Model No. HUAWEI Y541-U02, WCDMA Mobile Phone Model No. HUAWEI Y560-U02, WCDMA Mobile Phone Model No. HUAWEI Y560-U12, WCDMA Mobile Phone Model No. Y360-U12, WCDMA smart phone Model No. HUAWEI U9510E, WCDMA/GSM Handset Model No. Hol-U19, WCDMA/LTE Digital Mobile Phone Model No. HUAWEI U9202L-1/U9202L-1, WCDMA/LTE Mobile handset Model No. U9501L, WCDMA/LTE smart phone Model No. 201HW, Y300II, Y360, Y3II, Y560, Y5II, Y6, Y6 Pro, Y625, and Y635, including when used in conjunction with one of said monitoring devices.

51. Additionally, or in the alternative, upon information and belief, since receiving notice of the '197 patent, Huawei has induced, and continues to induce infringement of the '197 Patent in

this judicial district, the State of Texas, and elsewhere, by intentionally inducing direct infringement of the '197 Patent, including by aiding or abetting the infringement of its end users and/or customers, by and through at least Huawei's offering for sale, and/or selling, without authority from Plaintiff, systems comprising at least the above-described products comprising said monitoring devices and/or comprising said monitoring and said receiving devices. Upon information and belief, such aiding and abetting comprises providing hardware, software, and/or instructions for such infringing uses by Huawei's customers and/or end users, including the use of the accused devices in combination, including via the use of what Huawei refers to as the Huawei Wear mobile application (including the Android and iOS versions thereof). On information and belief, Huawei's infringement of the asserted claims of the '197 patent is clear, unmistakable, and inexcusable, and, on information and belief, Huawei is specifically intending such infringement post-notice.

52. Such induced infringement has occurred since Huawei became aware of the '197 patent, at a minimum, as noted above, and the knowledge and awareness that such actions and use by users comprise infringement of the '197 patent.

53. Further, to the extent Huawei continues its infringing activities post-suit, such infringement would be clearly and necessarily willful. Huawei's infringement of the asserted claims of the '197 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei has been aware of such infringement post-notice. Such infringement is necessarily willful and deliberate. Plaintiff believes and contends that Huawei's intentional continuance of its clear, unmistakable, and inexcusable infringement of the '197 patent post notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

54. Including on account of the foregoing, Plaintiff contends such post-suit activities by Huawei qualify this as an egregious case of misconduct beyond typical infringement, entitling

Plaintiff to enhanced damages. Thus, including based on the foregoing, Plaintiff requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

55. Each of Huawei's aforesaid activities have been without authority and/or license from Plaintiff.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,663,118

56. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

57. The '118 patent, entitled "Monitoring Device With A Pedometer," was duly and legally issued by the USPTO on March 4, 2014 after full and fair examination.

58. The claims of the '118 patent cover, *inter alia*, devices, including associated with computers and computer sensors, for monitoring a plurality of real-time vital signs of a user and providing a pedometer function, the system comprising: a monitoring device worn on an arm of the user, *e.g.*, an arm based pedometer, the monitoring device having a first surface and a second surface, the monitoring device comprising an optical sensor for generating a real-time vital sign signal corresponding to the heart rate of the user, an accelerometer, a processor configured to perform a pedometer function based on a plurality of signals from the accelerometer, a powering source for the monitoring device, and a short range wireless transceiver for transmitting the real-time vital sign signal; and a receiving device comprising a short range wireless transceiver, a processor and a display screen; wherein the optical sensor is an optical sensor comprising one or more of a light-to-voltage or light-to-frequency photodetector capable of transmitting a digital signal, and one or more light emitting diode capable of radiating light ranging in the range of 550 nanometers to 1100 nanometers, including at 567 nanometers.

59. The claims of the '118 patent cover, *inter alia*, devices comprising said arm-based pedometers and they further cover systems comprising said arm-based pedometers and receiving devices comprising short range wireless transceivers, processors, and display screens.

60. Without limitation, Huawei infringes the '197 patent by and through at least its using, making, offering for sale, and/or selling of systems comprising such monitoring devices and/or such receiving devices. Without limitation, said arm-based pedometers comprise at least the products and/or model nos. referred to by Huawei as Huawei Watch, Huawei Watch 2, Huawei Band 2, Huawei Band 2 Pro, Color Band A2, Huawei Fit, and/or Honor Band 3. Further, without limitation, said receiving devices comprise at least the receiving devices noted hereinabove.

61. Additionally, or in the alternative, upon information and belief, since receiving notice of the '118 patent, Huawei has induced, and continues to induce infringement of the '118 patent in this judicial district, the State of Texas, and elsewhere, by intentionally inducing direct infringement of the '118 patent, including by aiding or abetting the infringement of its end users and/or customers, by and through at least Huawei's offering for sale, and/or selling, without authority from Plaintiff, devices and/or systems comprising at least the above-described arm-based pedometers and/or comprising said arm-based pedometers and said receiving devices. Upon information and belief, such aiding and abetting comprises providing hardware, software, and/or instructions for such infringing uses by Huawei's customers and/or end users, including the use of the accused devices in combination, including via the use of what Huawei refers to as the Huawei Wear mobile application (including the Android and iOS versions thereof). On information and belief, Huawei's infringement of the asserted claims of the '118 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei is specifically intending such infringement post-notice.

62. Such induced infringement has occurred since Huawei became aware of the '118 patent, at a minimum, as noted above, and the knowledge and awareness that such actions and use by users comprise infringement of the '118 patent.

63. Further, to the extent Huawei continues its infringing activities post-suit, such infringement

would be clearly and necessarily willful. Huawei's infringement of the asserted claims of the '118 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei has been aware of such infringement post-notice. Such infringement is necessarily willful and deliberate. Plaintiff believes and contends that Huawei's intentional continuance of its clear, unmistakable, and inexcusable infringement of the '118 patent post notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

64. Including on account of the foregoing, Plaintiff contends such post-suit activities by Huawei qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Thus, including based on the foregoing, Plaintiff requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

65. Each of Huawei's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,109,902

66. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

67. The '902 patent, entitled "Monitoring Device With A Pedometer," was duly and legally issued by the USPTO on August 18, 2015 after full and fair examination.

68. The claims of the '902 patent cover, *inter alia*, devices, including associated with computers and computer sensors, for monitoring a plurality of real-time vital signs of a user and providing a pedometer function, the system comprising: a monitoring device worn on an arm of the user, *e.g.*, an arm based pedometer, the monitoring device having a first surface and a second surface, the monitoring device comprising an optical sensor for generating a real-time vital sign signal corresponding to the heart rate of the user, an accelerometer, a processor configured to perform a pedometer function based on a plurality of signals from the accelerometer, a powering source for the monitoring device, and a short range wireless transceiver for transmitting the real-

time vital sign signal; and a receiving device comprising a short range wireless transceiver, a processor and a display screen; wherein the optical sensor is an optical sensor comprising one or more of a light-to-voltage or light-to-frequency photodetector capable of transmitting a digital signal, and one or more light emitting diode capable of radiating light ranging in the range of 550 nanometers to 1100 nanometers, including at 570 nanometers.

69. The claims of the '902 patent cover, *inter alia*, devices comprising said arm-based pedometers and they further cover systems comprising said arm-based pedometers and receiving devices comprising short range wireless transceivers, processors, and display screens.

70. Without limitation, Huawei infringes the '902 patent by and through at least its using, making, offering for sale, and/or selling of systems comprising such monitoring devices and/or such receiving devices. Without limitation, said arm-based pedometers comprise at least the products and/or model nos. referred to by Huawei as Huawei Watch, Huawei Watch 2, Huawei Band 2, Huawei Band 2 Pro, Color Band A2, Huawei Fit, and/or Honor Band 3. Further, without limitation, said receiving devices comprise at least the receiving devices noted hereinabove.

71. Additionally, or in the alternative, upon information and belief, since receiving notice of the '902 patent, Huawei has induced, and continues to induce infringement of the '902 Patent in this judicial district, the State of Texas, and elsewhere, by intentionally inducing direct infringement of the '902 Patent, including by aiding or abetting the infringement of its end users and/or customers, by and through at least Huawei's offering for sale, and/or selling, without authority from Plaintiff, devices and/or systems comprising at least the above-described arm-based pedometers. Upon information and belief, such aiding and abetting comprises providing hardware, software, and/or instructions for such infringing uses by Huawei's customers and/or end users, including the use of the accused devices in combination, including via the use of what Huawei refers to as the Huawei Wear mobile application (including the Android and iOS versions thereof).

On information and belief, Huawei's infringement of the asserted claims of the '902 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei is specifically intending such infringement post-notice.

72. Such induced infringement has occurred since Huawei became aware of the '902 patent, at a minimum, as noted above, and the knowledge and awareness that such actions and use by users comprise infringement of the '902 patent.

73. Further, to the extent Huawei continues its infringing activities post-suit, such infringement would be clearly and necessarily willful. Huawei's infringement of the asserted claims of the '902 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei has been aware of such infringement post-notice. Such infringement is necessarily willful and deliberate. Plaintiff believes and contends that Huawei's intentional continuance of its clear, unmistakable, and inexcusable infringement of the '902 patent post notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

74. Including on account of the foregoing, Plaintiff contends such post-suit activities by Huawei qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Thus, including based on the foregoing, Plaintiff requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

75. Each of Huawei's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 9,314,166

76. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

77. The '166 patent, entitled "Monitoring Device With A Pedometer," was duly and legally issued by the USPTO on April 19, 2016 after full and fair examination.

78. The claims of the '166 patent cover, *inter alia*, devices, including associated with

computers and computer sensors, for monitoring a plurality of real-time vital signs of a user and providing a pedometer function, the system comprising: a monitoring device worn on an arm of the user, *e.g.*, an arm based pedometer, the monitoring device comprising an optical sensor for generating a real-time vital sign signal corresponding to the real-time heart rate of the user, an accelerometer, a processor configured to perform a pedometer function based on a plurality of signals from the accelerometer to generate a distance traveled by the user, and a short range wireless transceiver for transmitting the real-time vital sign signal; and a receiving device comprising a short range wireless transceiver, a processor and a display screen; wherein the optical sensor is an optical sensor comprising one or more of a light-to-voltage or light-to-frequency photodetector capable of transmitting a digital signal, and one or more light emitting diode capable of radiating light ranging in the range of 550 nanometers to 1100 nanometers, including at 570 nanometers.

79. The claims of the '166 patent cover, *inter alia*, devices comprising said arm-based pedometers and they further cover systems comprising said arm-based pedometers and receiving devices comprising short range wireless transceivers, processors, and display screens.

80. Without limitation, Huawei infringes the '166 patent by and through at least its using, making, offering for sale, and/or selling of systems comprising such monitoring devices and/or such receiving devices. Without limitation, said arm-based pedometers comprise at least the products and/or model nos. referred to by Huawei as Huawei Watch, Huawei Watch 2, Huawei Band 2, Huawei Band 2 Pro, Color Band A2, Huawei Fit, and/or Honor Band 3. Further, without limitation, said receiving devices comprise at least the receiving devices noted hereinabove.

81. Additionally, or in the alternative, upon information and belief, since receiving notice of the '166 patent, Huawei has induced, and continues to induce infringement of the '166 Patent in this judicial district, the State of Texas, and elsewhere, by intentionally inducing direct

infringement of the '166 Patent, including by aiding or abetting the infringement of its end users and/or customers, by and through at least Huawei's offering for sale, and/or selling, without authority from Plaintiff, devices and/or systems comprising at least the above-described arm-based pedometers and/or comprising said arm-based pedometers and said receiving devices. Upon information and belief, such aiding and abetting comprises providing hardware, software, and/or instructions for such infringing uses by Huawei's customers and/or end users, including the use of the accused devices in combination, including via the use of what Huawei refers to as the Huawei Wear mobile application (including the Android and iOS versions thereof). On information and belief, Huawei's infringement of the asserted claims of the '166 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei is specifically intending such infringement post-notice.

82. Such induced infringement has occurred since Huawei became aware of the '166 patent, at a minimum, as noted above, and the knowledge and awareness that such actions and use by users comprise infringement of the '166 patent.

83. Further, to the extent Huawei continues its infringing activities post-suit, such infringement would be clearly and necessarily willful. Huawei's infringement of the asserted claims of the '166 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei has been aware of such infringement post-notice. Such infringement is necessarily willful and deliberate. Plaintiff believes and contends that Huawei's intentional continuance of its clear, unmistakable, and inexcusable infringement of the '166 patent post notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

84. Including on account of the foregoing, Plaintiff contends such post-suit activities by Huawei qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Thus, including based on the foregoing, Plaintiff requests an award

of enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

85. Each of Huawei's aforesaid activities have been without authority and/or license from Plaintiff.

### COUNT V – INFRINGEMENT OF U.S. PATENT NO. 9,591,973

86. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

87. The '973 patent, entitled "Monitoring Device With A Pedometer," was duly and legally issued by the USPTO on March 14, 2017 after full and fair examination.

88. The claims of the '973 patent cover, *inter alia*, devices, including associated with computers and computer sensors, for monitoring a plurality of real-time vital signs of a user and providing a pedometer function, the system comprising: a monitoring device worn on an arm of the user, *e.g.*, an arm based pedometer, the monitoring device comprising an optical sensor for generating a real-time vital sign signal corresponding to the real-time heart rate of the user, an accelerometer, a processor configured to perform a pedometer function based on a plurality of signals from the accelerometer to generate a distance traveled by the user, and a short range wireless transceiver for transmitting the real-time vital sign signal; and a receiving device comprising a short range wireless transceiver, a processor and a display screen; wherein the optical sensor is an optical sensor comprising one or more of a light-to-voltage or light-to-frequency photodetector capable of transmitting a digital signal, and one or more light emitting diode capable of radiating light ranging in the range of 550 nanometers to 1100 nanometers.

89. The claims of the '973 patent cover, *inter alia*, devices comprising said arm-based pedometers and they further cover methods for monitoring a distance traveled by a user which comprise using said arm-based pedometers.

90. Without limitation, Huawei infringes the '973 patent by and through at least its using, making, offering for sale, and/or selling of systems comprising such monitoring devices and/or

such receiving devices. Without limitation, said arm-based pedometers comprise at least the products and/or model nos. referred to by Huawei as Huawei Watch, Huawei Watch 2, Huawei Band 2, Huawei Band 2 Pro, Color Band A2, Huawei Fit, and/or Honor Band 3. Further, without limitation, said receiving devices comprise at least the receiving devices noted hereinabove.

91. Additionally, or in the alternative, upon information and belief, since receiving notice of the '902 patent, Huawei has induced, and continues to induce infringement of the '973 Patent in this judicial district, the State of Texas, and elsewhere, by intentionally inducing direct infringement of the '973 Patent, including by aiding or abetting the infringement of its end users and/or customers, by and through at least Huawei's offering for sale, and/or selling, without authority from Plaintiff, devices and/or systems comprising at least the above-described arm-based pedometers. Upon information and belief, such aiding and abetting comprises providing hardware, software, and/or instructions for such infringing uses by Huawei's customers and/or end users, including the use of the accused devices in combination, including via the use of what Huawei refers to as the Huawei Wear mobile application (including the Android and iOS versions thereof). On information and belief, Huawei's infringement of the asserted claims of the '973 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei is specifically intending such infringement post-notice.

92. Such induced infringement has occurred since Huawei became aware of the '973 patent, at a minimum, as noted above, and the knowledge and awareness that such actions and use by users comprise infringement of the '973 patent.

93. Further, to the extent Huawei continues its infringing activities post-suit, such infringement would be clearly and necessarily willful. Huawei's infringement of the asserted claims of the '973 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei has been aware of such infringement post-notice. Such infringement is necessarily willful and deliberate.

Plaintiff believes and contends that Huawei's intentional continuance of its clear, unmistakable, and inexcusable infringement of the '973 patent post notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

94. Including on account of the foregoing, Plaintiff contends such post-suit activities by Huawei qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Thus, including based on the foregoing, Plaintiff requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

95. Each of Huawei's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 9,820,659

96. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

97. The '659 patent, entitled "Monitoring Device With A Pedometer," was duly and legally issued by the USPTO on November 21, 2017 after full and fair examination.

98. The claims of the '659 patent cover, *inter alia*, devices, including associated with computers and computer sensors, for monitoring a plurality of real-time vital signs of a user and providing a pedometer function, the system comprising: a monitoring device worn on an arm of the user, *e.g.*, an arm based pedometer, the monitoring device comprising an optical sensor for generating a real-time vital sign signal corresponding to the real-time heart rate of the user, an accelerometer, a processor configured to perform a pedometer function based on a plurality of signals from the accelerometer to generate a distance traveled by the user, and a short range wireless transceiver for transmitting the real-time vital sign signal; and a receiving device comprising a short range wireless transceiver, a processor and a display screen; wherein the optical sensor is an optical sensor comprising one or more of a light-to-voltage or light-to-frequency photodetector capable of transmitting a digital signal, and one or more light emitting diode capable

of radiating light ranging in the range of 550 nanometers to 1100 nanometers.

99. The claims of the '659 patent cover, *inter alia*, devices comprising said arm-based pedometers and they further cover systems comprising said arm-based pedometers and receiving devices comprising short range wireless transceivers, processors, and display screens.

100.    Without limitation, Huawei infringes the '659 patent by and through at least its using, making, offering for sale, and/or selling of systems comprising such monitoring devices and/or such receiving devices. Without limitation, said arm-based pedometers comprise at least the products and/or model nos. referred to by Huawei as Huawei Watch, Huawei Watch 2, Huawei Band 2, Huawei Band 2 Pro, Color Band A2, Huawei Fit, and/or Honor Band 3. Further, without limitation, said receiving devices comprise at least the receiving devices noted hereinabove.

101.    Additionally, or in the alternative, upon information and belief, since receiving notice of the '659 patent, Huawei has induced, and continues to induce infringement of the '659 Patent in this judicial district, the State of Texas, and elsewhere, by intentionally inducing direct infringement of the '659 Patent, including by aiding or abetting the infringement of its end users and/or customers, by and through at least Huawei's offering for sale, and/or selling, without authority from Plaintiff, devices and/or systems comprising at least the above-described arm-based pedometers and/or comprising said arm-based pedometers and said receiving devices. Upon information and belief, such aiding and abetting comprises providing hardware, software, and/or instructions for such infringing uses by Huawei's customers and/or end users, including the use of the accused devices in combination, including via the use of what Huawei refers to as the Huawei Wear mobile application (including the Android and iOS versions thereof). On information and belief, Huawei's infringement of the asserted claims of the '659 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei is specifically intending such infringement post-notice.

102.     Such induced infringement has occurred since Huawei became aware of the '659 patent, at a minimum, as noted above, and the knowledge and awareness that such actions and use by users comprise infringement of the '659 patent.

103.     Further, to the extent Huawei continues its infringing activities post-suit, such infringement would be clearly and necessarily willful. Huawei's infringement of the asserted claims of the '659 patent is clear, unmistakable, and inexcusable, and on information and belief, Huawei has been aware of such infringement post-notice. Such infringement is necessarily willful and deliberate. Plaintiff believes and contends that Huawei's intentional continuance of its clear, unmistakable, and inexcusable infringement of the '659 patent post notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

104.     Including on account of the foregoing, Plaintiff contends such post-suit activities by Huawei qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Thus, including based on the foregoing, Plaintiff requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

105.     Each of Huawei's aforesaid activities have been without authority and/or license from Plaintiff.

## DAMAGES

106.     By way of its infringing activities, Huawei has caused and continues to cause Plaintiff to suffer damages, and Plaintiff is entitled to recover from Huawei the damages sustained by Plaintiff as a result of Huawei's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

107.     Huawei's infringement of Plaintiff's rights under the patents-in-suit will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless

enjoined by this Court.

108.    Plaintiff also requests that the Court make a finding that this is an exceptional case entitling Plaintiff to recover their attorneys' fees and costs pursuant to 35 U.S.C. § 285.

## JURY DEMAND

109.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

## PRAYER FOR RELIEF

110.    Plaintiff respectfully requests that the Court find in their favor and against Huawei, and that the Court grant Plaintiff the following relief:

A.    An adjudication that, including pursuant to 35 U.S.C. § 271, one or more claims of the patents-in-suit has been directly and/or indirectly infringed, either literally and/or under the doctrine of equivalents, by Huawei;

B.    An award to Plaintiff of damages pursuant to 35 U.S.C. § 284 adequate to compensate Plaintiff for Huawei's past infringement, together with pre-judgment and post-judgment interest, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.    A grant of preliminary and permanent injunction pursuant to 35 U.S.C. § 283, enjoining Huawei, and all persons, including its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation therewith, from making, using, offering to sell, or selling in the United States, or importing into the United States, any methods, systems, devices, or computer readable media that infringe any claim of the patents-in-suit, or contributing to, or inducing, the same by others, from further acts of infringement with respect to the claims of the

patents-in-suit;

D.  That this Court declare that Huawei's pre-suit and continuing post-suit infringement is, and continues to be, willful and egregious, and, accordingly, award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284;

E.  That this Court declare this to be an exceptional case and award Plaintiff reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

F.  A judgment and order requiring Huawei to pay Plaintiff its damages, costs, expenses, fees, and prejudgment and post-judgment interest for Huawei's infringement of the patents-in-suit as provided under 35 U.S.C. §§ 284 and/or 285; and

G.  Any and all further relief for which Plaintiff may show itself justly entitled that this Court deems just and proper.

May 17, 2018                                         Respectfully submitted,

                                                    /s/ *John J. Edmonds*
                                                    John J. Edmonds – Lead Counsel
                                                      jedmonds@ip-lit.com
                                                      Texas Bar No. 789758
                                                    Michael J. Collins
                                                      mcollins@ip-lit.com
                                                      Texas Bar No. 04614510
                                                    Shea N. Palavan
                                                      spalavan@ip-lit.com
                                                      Texas Bar No. 24083616
                                                    Eric R. Carr
                                                      ecarr@ip-lit.com
                                                      Texas Bar No. 24091261
                                                    **COLLINS EDMONDS & SCHLATHER, PLLC**
                                                    1616 South Voss Road, Suite 125
                                                    Houston, Texas 77057
                                                    P: 281-501-3425
                                                    F: 832-415-2535

                                                    ***Attorneys for Plaintiff,***
                                                    ***Health Watch, LLC***